1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEAN-BAPTISTE YAMINDI, et al.,

               Plaintiffs,

     v.

CAMERON OSMER, et al.,

               Defendants.

CASE NO. 2:22-cv-00961-LK

ORDER GRANTING MOTION TO
AMEND

       This matter comes before the Court on Plaintiffs' motion for leave to amend their complaint to join two additional plaintiffs. Dkt. No. 14. Plaintiffs Jean-Baptiste Yamindi and Nickiesha Gordon allege that Washington State Trooper Cameron Osmer wrongfully arrested them for driving under the influence—without probable cause and based on their national origin and race— and did the same to the two other potential plaintiffs they seek to join. *Id.* at 1–2. Defendants do not oppose consolidation for purposes of pre-trial proceedings and discovery, but at the same time, they argue that all four individuals should be assigned a separate case number. Dkt. No. 17 at 1– 2, 9. For the reasons set forth below, the Court grants the motion.

# I.   BACKGROUND

This matter arises out of multiple traffic stops conducted by Trooper Osmer. On October 11, 2022, Trooper Osmer pulled Yamindi over, directed him to exit the vehicle, and administered a breath test that showed a blood alcohol content ("BAC") of 0.000. Dkt. No. 1-2 at 2–3. Trooper Osmer also instructed Yamindi to perform field sobriety tests, then arrested him for driving while under the influence. *Id.* at 3. Trooper Osmer also obtained a search warrant for Yamindi's blood, and Yamindi alleges that the results "showed zero alcohol or drugs in [his] blood[.]" *Id.* The charges against Yamindi were dismissed. *Id.*

On November 2, 2020, Trooper Osmer pulled Gordon over, directed her to exit the vehicle, and administered a breath test that showed a BAC of 0.000. *Id.* at 4–5. Trooper Osmer instructed her to perform field sobriety tests and arrested her for driving under the influence. *Id.* at 5. Trooper Osmer obtained a search warrant for her blood, which was negative for the presence of drugs or alcohol. *Id.* Ultimately, the charges against her were dismissed. *Id.* at 6.

Plaintiffs filed suit in King County Superior Court on June 21, 2022 and served Defendants on the same day. Dkt. No. 1 at 1–2. Defendants timely removed the case to this Court on July 12, 2022. *See id.* at 1.

Plaintiffs assert claims under the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code § 49.60.030, alleging that Trooper Osmer discriminated against them and denied them full enjoyment of public accommodation based on their race (Black) and national origin (Central African Republic and Jamaica). Dkt. No. 1-2 at 8. Yamindi is originally from the Central African Republic, Gordon is originally from Jamaica, and both speak with accents. *Id.* at 1, 8. They also assert a claim against Trooper Osmer under Section 1983, alleging that he arrested them without probable cause and subjected them to an unreasonable search by causing their blood to be drawn without probable cause and basing the search on "intentional or reckless omissions and/or

misrepresentations to judicial officers to obtain search warrants[.]" *Id.* at 8–9. They further assert a claim of negligence against Trooper Osmer, alleging that he negligently exposed them to the risk of COVID-19 infection by booking them into jail even though non-violent offenders "were not to be placed in lockup[.]" *Id.* at 4, 6, 9.

Plaintiffs also assert claims of discrimination under the WLAD and negligence against the Washington State Patrol ("WSP"). *Id.* at 8. With respect to the latter claim, they allege that WSP "failed to exercise due care in hiring, training, and/or supervising Trooper Osmer," resulting in "an unreasonable risk" that he would arrest and search "black and/or immigrant drivers" without probable cause. *Id.* at 7, 9. They also allege that WSP "failed to exercise due care in designing and implementing COVID-19 policies" and training Trooper Osmer in that area, "exposing Dr. Yamindi and Ms. Gordon to the risks of COVID-19 as a direct and proximate result." *Id.* at 8.

In February 2023, Plaintiffs moved to amend their complaint to add similar allegations regarding would-be plaintiffs Fitsum Seifu and Florence Masundire, who are also Black immigrants. Dkt. No. 14 at 3.  Like Plaintiffs, they were stopped by Trooper Osmer, blew a 0.000 on the breathalyzer at the scene, underwent blood tests that were negative, and had their charges dropped. *Id.* Masundire and Seifu filed claims with the State of Washington, and the exhaustion periods for their tort claims ended on March 10 and 25, 2023, respectively. *Id.* at 4.

Plaintiffs' counsel first raised the potential of joining Masundire and Seifu on January 23, 2023, before filing this motion. Dkt. No. 15 at 2; Dkt. No. 15-2 at 7. Defendants agreed to amend/consolidate the cases for discovery purposes but disagreed with adding the federal claims now and the state claims later (after administrative exhaustion), with maintaining the same case schedule for all four Plaintiffs, and with joining all four Plaintiffs together for trial. Dkt. No. 15-2 at 2–3.

## II.   DISCUSSION

This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because Plaintiffs assert a claim under 42 U.S.C. § 1983. Dkt. No. 1-2 at 8.

Plaintiffs' motion to amend to add two new plaintiffs implicates Federal Rules of Civil Procedure 15 and 20. *See, e.g.*, *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1374 (9th Cir. 1980); *Lyons v. USAA Cas. Ins. Co.*, No. 3:22-cv-05462-JHC, 2022 WL 16854273, at *2 (W.D. Wash. Nov. 10, 2022). The Court addresses each in turn.

### A.   Amendment of the Complaint

The general rule is that leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, the Court may deny leave to amend after considering "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (internal quotation marks omitted) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)). Moreover, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

Defendants' response does not argue that amendment is inappropriate or address the Rule 15 standards. Instead, their response argues only that joinder is unwarranted under Rule 20. Dkt. No. 17 at 4–9. Based on the absence of bad faith, undue delay, prejudice to the opposing party, and/or futility, the Court finds amendment warranted under the liberal standard of Rule 15.

### B.   Permissive Joinder

Permissive joinder is appropriate only when multiple plaintiffs each assert a right to relief "arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

But even when Rule 20(a)(1)'s threshold requirements are met, a district court must also "examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting *Desert Empire Bank*, 623 F.2d at 1375).

Rule 20 is "construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). The same-transaction and common-question requirements are "not rigid tests, but rather are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1187–88 (C.D. Cal. 2015) (cleaned up).

### 1. Same Series of Transactions or Occurrences

For a claim to arise out of the same transaction, occurrence, or series thereof, there must be "factual similarity" in the allegations supporting plaintiff's clams. *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013). "There is no bright-line definition of 'transaction,' 'occurrence,' or 'series'; courts assess the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive party joinder." *Bentley Indus., Inc. v. Longevity Network, LLC*, No. 2:12-cv-1067-JAD-NJK, 2013 WL 6858904, *3 (D. Nev. Dec. 30, 2013) (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)). Following that analysis, "[j]oinder in a single case may be appropriate—even though there might be different occurrences—if the claims involve enough related operative facts." *Id.*; *see also Gonzales v. Wal-*

1   *Mart Stores, Inc.*, No. 2:14-cv-00230-JCM-NJK, 2014 WL 2591690, at *6 (D. Nev. May 22, 2014)

2   ("A series of occurrences exists where the occurrences involve related activities and have a

3   similarity in factual background."), *report and recommendation adopted*, 2014 WL 2591499 (D.

4   Nev. June 10, 2014); 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure

5   § 1653 (3d ed.) (explaining that courts are "inclined to find that claims arise out of the same

6   transaction or occurrence when the likelihood of overlapping proof and duplication in testimony

7   indicates that separate trials would result in delay, inconvenience, and added expense.").

8          Defendants argue that joinder is unwarranted because although Plaintiffs' claims are

9   "similar," they "do not arise from the same transaction or occurrence, or a series of transactions or

10  occurrences." Dkt. No. 17 at 5. They aver that "Plaintiffs have no relation to one another, were not

11  investigated for DUI on the same day, were not stopped in the same location, exhibited different

12  driving patterns, and exhibited different clues of impairment." *Id.* at 6.

13         To be sure, the arrests at issue here involved different days, locations, and perhaps most

14  importantly, individual determinations of probable cause for each arrest and blood draw. Dkt. Nos.

15  19-1–19-4. Nevertheless, all four Plaintiffs accuse the same Defendants of the same wrongdoing.

16  Dkt. No. 14 at 14–25. And there is a great deal of factual overlap: the arrests were close in time

17  (occurring within a three-month span), and they involved the same arresting officer, Black

18  immigrant drivers, a breathalyzer reading of 0.000, the administration of field sobriety tests, the

19  application for search warrants that resulted in negative blood tests, and booking non-violent

20  arrestees into jail during the COVID-19 pandemic. *Id.* Plaintiffs' allegations indicate that there is

21  a high likelihood of overlapping proof and duplication of testimony regarding those facts, Trooper

22  Osmer's alleged discriminatory animus, WSP's practices regarding hiring, training, and

23  supervision, Defendants' practices regarding traffic stops when impairment is suspected, and

24  Defendants' policies and practices regarding jailing non-violent arrestees during the COVID-19

pandemic. *Id.* And by asserting claims that arise out of WSP's COVID-19 policies and its practices regarding supervising, hiring, and training, *id.* at 23–25, Plaintiffs have raised systemic issues that implicate the same transaction or occurrence. *Cf. Coughlin*, 130 F.3d at 1350 (denying joinder where plaintiffs did not allege a policy or practice or that "their claims arise out of a systematic pattern of events and, therefore, arise from the same transaction or occurrence.").

Other courts have allowed permissive joinder in the Fourth Amendment context. *See, e.g.*, *Gates v. Gomez*, No. 17-cv-00901-WQH-BGS, 2018 WL 3629929, at *10–12 (S.D. Cal. July 30, 2018) (permitting joinder of defendants in excessive force case), *report and recommendation adopted*, 2018 WL 4104239 (S.D. Cal. Aug. 28, 2018); *Osegueda v. Stanislaus Cnty. Pub. Safety Ctr.*, No. 1:16-cv-1218-LJO-BAM, 2017 WL 1348943, at *6 (E.D. Cal. Apr. 11, 2017) (permitting joinder of multiple plaintiffs' excessive force claims). Courts have similarly found the existence of the same series of occurrences in the analogous context of employment discrimination where, as here, plaintiffs alleged discriminatory animus against a particular group. *See, e.g.*, *Daramy v. Arctic Storm Mgmt. Grp., LLC*, No. 2:21-cv-01431-MJP, 2022 WL 16960528, at *2 (W.D. Wash. Nov. 16, 2022) (denying motion to sever claims of Black Africans who alleged similar harassing and discriminatory conduct). There is no reason to reach a different result here.

The Court emphasizes that the factual predicates for each claim need not be identical. Again, the controlling inquiry is whether the claims involve a sufficiently similar narrative premised on sufficiently similar conduct such that a duplication of testimony and other proof is likely. That is the case here, and Rule 20(a)(1)(A) is satisfied.

2.   Common Questions of Law or Fact

Plaintiffs argue that common questions include:

whether probable cause exists to arrest for DUI when the arrestee blew a 0.000 breathalyzer and showed no signs of intoxication; whether probable cause . . . exists for a search warrant for blood in the same circumstances; whether Trooper Osmer

harbors discriminatory animus towards Black and immigrant drivers; whether the Washington State Patrol properly trains and instructs its officers on bias, probable cause, and arrest procedures; whether Trooper Osmer and the State Patrol deny Black and immigrant drivers a public accommodation based on race or national origin; and whether punitive damages are appropriate in light of the repeated and wanton misconduct against all four plaintiffs.

Dkt. No. 14 at 7–8. Defendants do not dispute that those issues amount to common questions of law and fact, and the Court finds that sufficient commonalities exist. Rule 20(a)(1)(B) is satisfied.

### 3.  Fundamental Fairness

Defendants argue that "even if this Court were to find joinder permissive, the prejudice to Defendants warrants severance." Dkt. No. 17 at 5. "Factors relevant to the fundamental fairness inquiry 'may include judicial economy, prejudice, and whether separate claims require different witnesses and documentary proof.'" *Milton v. California*, No. 21-CV-08545-JST, 2022 WL 17978802, at *6 (N.D. Cal. Dec. 8, 2022) (quoting *Jacques v. Hyatt Corp.*, No. C11-05364-WHA, 2012 WL 3010969, at *2 (N.D. Cal. July 23, 2012)).

Defendants argue that trying all four Plaintiffs' claims together would be prejudicial and lead to "factual and legal confusion for the jury," requiring Defendants to explain "how the assertions of th[e] respective witnesses do not have a nexus to plaintiffs' claims." Dkt. No. 17 at 8. But at this stage of the proceedings, it appears that the claims of Seifu and Masundire do have a nexus to Plaintiffs' claims: they too allege that they were victims of the Washington State Patrol's and Trooper Osmer discrimination and negligence in very similar factual scenarios. Dkt. No. 14 at 14–24. Defendants also contend that trying the cases together would "circumvent the exclusion of ER 404 evidence" because evidence of Defendants' prior "bad acts" would otherwise be excluded. Dkt. No. 17 at 8–9. However, evidence of discriminatory animus may be admissible regardless of whether the cases are tried together or separately. Fed. R. Evid. 404(b)(2) (evidence of other wrongs or acts may be admissible to prove "motive" and "intent"); *see also Heyne v.*

*Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995) ("[A]n employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason" for the challenged conduct). In those circumstances, others may be permitted to testify about their own alleged mistreatment by the defendant. *Id.* at 1480 ("The sexual harassment of others, if shown to have occurred, is relevant and probative of [defendant]'s general attitude of disrespect toward his female employees, and his sexual objectification of them."); *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 445 (9th Cir. 2017) (same); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1062 (9th Cir. 2002) (finding that "the City's allegedly discriminatory treatment of other clubs playing rap and hip-hop music and catering to African American patrons may be relevant evidence of an unconstitutional purpose," including race or viewpoint discrimination); *Houserman v. Comtech Telcomms. Corp.*, 519 F. Supp. 3d 863, 871 (W.D. Wash. 2021) (noting that the Ninth Circuit has held that evidence of other people's discrimination complaints are "admissible to prove intent of an employer to discriminate under Rule 404(b) of the Federal Rules of Evidence."). Such evidence may also be admissible to prove that the Washington State Patrol "knew, or in the exercise of reasonable care should have known, that [Trooper Osmer] presented a risk of danger to others." *Niece v. Elmview Grp. Home*, 929 P.2d 420, 426 (Wash. 1997) (describing the elements of a negligent supervision claim); *see also Rosado-Martinez v. Jackson*, No. 1:16-CV-496, 2017 WL 2544189, at *1–2 (W.D. Mich. June 13, 2017) (refusing to exclude defendant's driving record under Rule 404(b) because plaintiffs' claim of negligent entrustment required them to show that defendant's employer "knew, or should have known, based on his driving record, that he was not competent to drive the tractor-trailer"). The Court need not decide the admissibility of such evidence now because Defendants may move to sever the cases before trial and/or exclude certain evidence based on a fuller record. Suffice to say, the possibility that evidence of discriminatory animus may be admissible even if the cases are tried

1  separately is sufficient to convince the Court that Defendants have not established prejudice at this

2  stage.

3         Defendants also argue that joinder will result in delay and the need to modify the case

4  schedule. Dkt. No. 17 at 9. It is true that certain deadlines have already passed, including expert

5  disclosures (due on March 6, 2023), disclosure of rebuttal expert testimony (due April 5, 2023),

6  and all discovery motions (due April 5, 2023). Dkt. No. 11 at 1. But Defendants do not specify the

7  length or scope of the delay they fear. Nor do they argue that the delay—if necessary—would be

8  prejudicial. Indeed, the parties stipulated to an extension of the trial date and pretrial deadlines.

9  Dkt. No. 23. Therefore, the Court finds that joinder is appropriate under Rule 20.

10 **C.     The Scope of the Amended Complaint**

11        Now that the Court has found that amendment and joinder are appropriate, the scope of the

12 amended complaint warrants brief discussion. When Plaintiffs filed their motion, Masundire and

13 Seifu had not yet exhausted their state tort claims, so the proposed order seeks to grant Plaintiffs

14 leave to file their proposed amended complaint with their federal claims now and then "to file any

15 subsequent amendment relating to the exhaustion of state law claims forthwith upon such

16 exhaustion and without further leave of the Court." Dkt. No. 16 at 1; *see also* Dkt. No. 14 at 4, 12–

17 50; Wash. Rev. Code § 4.92.100(1) ("All claims against the state, or against the state's officers,

18 employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct,

19 must be presented to the office of risk management."); *Id.* § 4.92.110 ("No action subject to the

20 claim filing requirements of RCW 4.92.100 shall be commenced against the state" or its employees

21 "for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim

22 is presented" to the identified government office). The exhaustion periods have elapsed, Dkt. No.

23 14 at 4, and the parties have not alerted the Court that the claims are resolved. Accordingly, there

24

is no reason to amend twice. Plaintiffs may file an amended complaint that includes the two new Plaintiffs' federal claims and their now exhausted state law claims.

**D.     The Court Denies Defendants' Requests for Relief Without Prejudice**

In their response brief, Defendants seek two forms of relief from the Court: (1) severing the claims of the two existing Plaintiffs, assigning each a separate cause number and scheduling order, and (2) continuing the existing case schedule. Dkt. No. 17 at 2, 9. However, "requests for affirmative relief must be made in a motion, not in the response[.]" *Sergeant v. Bank of Am., N.A.*, No. C17-5232-BHS, 2018 WL 1427345, at *1 n.2 (W.D. Wash. Mar. 22, 2018) (citing LCR 7(b)(1), 7(k)); *see also Meghinasso v. Mercedes-Benz USA*, No. C17-5930-LK, 2022 WL 226078, at *1 (W.D. Wash. Jan. 26, 2022) ("[I]t is procedurally improper to include a request for affirmative relief in a response brief[.]"). That said, the Court recognizes that discovery may shed relevant light on whether Plaintiffs' claims should be severed. Therefore, Defendants' requests for relief are denied without prejudice to their right to bring a motion for a continuance, or, after discovery, to sever the cases for trial.

## III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to amend. Dkt. No. 14. Plaintiffs may file an amended complaint within 14 days of the date of this Order.

Dated this 26th day of April, 2023.

Lauren King
United States District Judge