The Honorable Lauren King

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| JEAN-BAPTISTE YAMINDI, NICKIESHA GORDON, FLORENCE MASUNDIRE and FITSUM SEIFU,<br><br>Plaintiffs,<br><br>v.<br><br>CAMERON OSMER and WASHINGTON STATE PATROL,<br><br>Defendant. | No. 2:22-CV-00961-LK<br><br>AMENDED COMPLAINT<br><br>JURY DEMAND |

## I.   INTRODUCTION

1.1   This is a civil rights action brought under the Washington Law Against Discrimination, 42 U.S.C. § 1983, and state tort law.

1.2   On separate occasions less than three months apart, Trooper Cameron Osmer of the Washington State Patrol arrested plaintiffs for driving under the influence, despite that plaintiffs blew 0.000 BAC ("Blood Alcohol Content") scores and showed no signs of intoxication. Trooper Osmer then went a step farther, misleading judicial officers to obtain warrants for blood from plaintiffs. All four plaintiffs' blood tests confirmed they were completely innocent and all charges were dropped.

1.3   Trooper Osmer did not select the victims of these unlawful arrests randomly. All four plaintiffs are immigrants. They speak with noticeable accents. And they are black. In the span of less than three months, Trooper Osmer unlawfully arrested and obtained invasive blood draws on all four. Plaintiffs seek damages and accountability before Trooper Osmer violates the rights of other black or immigrant residents of King County.

AMENDED COMPLAINT - 1
No. 2:22-CV-00961-LK

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

## II. PARTIES

2.1 Plaintiff Jean-Baptiste Yamindi is a resident of the State of Washington. He has lived in Seattle since 2014. His race is black and he is originally from the Central African Republic. He speaks fluent English with a French accent. Dr. Yamindi is employed as a software engineer and holds a Ph.D and a Post-Doctorate in information systems and telecommunications.

2.2 Plaintiff Nickiesha Gordon is a resident of the State of Florida, who resided in the State of Washington as of November 2, 2020. Her race is black and her national origin is Jamaican. She speaks fluent English with a Jamaican accent. She worked as a police officer in Jamaica, and then became a home healthcare aid.

2.3 Plaintiff Florence Masundire is a resident of the State of Washington. She has lived in Seattle since 2009. Her race is black and she is originally from Zimbabwe. She speaks fluent English with a slight accent. Ms. Masundire works two jobs as a certified nursing assistant. She is a devout Christian and is active in her church community.

2.4 Plaintiff Fitsum Seifu is a resident of the State of Washington. She has lived in the United States since 2002. Her race is black and she is originally from Somalia. She speaks English with an Amharic accent. Ms. Seifu is employed as a home care giver.

2.5 Defendant Cameron Osmer is a State Trooper employed by the Washington State Patrol, acting at all relevant times under color of state of law. He is sued here in his individual capacity.

2.6 Defendant Washington State Patrol is an agency of the State of Washington, acting under color of state law.

## III. JURISDICTION, VENUE, and JOINDER

3.1 This Court has jurisdiction under 28 U.S.C. § 1331, and venue is proper under 28 U.S. Code § 1391, because the events giving rise to the claims arose in King County.

3.2 Joinder of Plaintiffs' claims is proper under Fed. R. Civ. P. 20 because Plaintiffs assert a right to relief jointly; their claims arise out of the same series of transactions or

AMENDED COMPLAINT - 2
No. 2:22-CV-00961-LK

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

occurrences and at the hand of the same individual defendant; and common questions of law and fact will arise in the action.

### IV.    FACTS

<u>Trooper Osmer Unlawfully Arrested and Searched Plaintiff Jean-Baptiste Yamindi</u>

4.1    On October 11, 2020, Trooper Osmer was on patrol, driving southbound on I-5 near the Roanoke Exit in King County, when he saw Dr. Yamindi.

4.2    Trooper Osmer pulled Dr. Yamindi over for an alleged traffic infraction, which was later dismissed.

4.3    Trooper Osmer could see that Dr. Yamindi was a black male, and could hear that Dr. Yamindi spoke with a noticeable accent.

4.4    Trooper Osmer told Dr. Yamindi to exit the vehicle.

4.5    Trooper Osmer had Dr. Yamindi take a breath test. The test showed a blood alcohol content (BAC) of 0.000.

4.6    A BAC result of 0.000 indicates that the test subject is not impaired by alcohol.

4.7    Dr. Yamindi was in fact completely sober.

4.8    Dr. Yamindi explained to Trooper Osmer that he was sober and in fact never used drugs or alcohol.

4.9    Trooper Osmer had Dr. Yamindi perform a series of field sobriety tests out of view of the police vehicle's dashboard camera.

4.10    Dr. Yamindi performed the tests satisfactorily and according to Trooper Osmer's instructions.

4.11    Trooper Osmer accused Dr. Yamindi of driving while intoxicated and handcuffed and arrested Dr. Yamindi.

4.12    Trooper Osmer searched Dr. Yamindi's car and person and found nothing incriminating.

4.13    Trooper Osmer had Dr. Yamindi's car impounded, damaging the car in the process.

AMENDED COMPLAINT - 3
No. 2:22-CV-00961-LK

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

4.14 Trooper Osmer obtained a search warrant for Dr. Yamindi's blood, and then obtained two vials of Dr. Yamindi's blood, which were tested for the presence of drugs or alcohol. The official test results showed zero alcohol or drugs in Dr. Yamindi's blood, consistent with the 0.000 BAC test result. All charges were dismissed.

4.15 In order to obtain a search warrant for blood from Dr. Yamindi, Trooper Osmer falsely represented to a Magistrate Judge in a warrant affidavit that there was a basis to believe Dr. Yamindi had been driving while impaired, when in fact there was none.

4.16 Trooper Osmer intentionally or recklessly made false statements and/or omissions in the warrant application, including the statement there was reason to believe Dr. Yamindi was impaired.

4.17 Trooper Osmer's reckless or intentional omissions and/or misrepresentations were material to the warrant application and the warrant would not have issued but for these reckless or intentional omissions and representations.

4.18 All charges against Dr. Yamindi were dismissed.

4.19 There was no probable cause to arrest Dr. Yamindi or draw his blood.

4.20 Trooper Osmer arrested and searched Dr. Yamindi without probable cause because Dr. Yamindi is black and/or because of Dr. Yamindi's national origin.

4.21 As a direct and proximate result of Trooper Osmer's unlawful arrest of Dr. Yamindi, Dr. Yamindi was forced to spend a night in jail in unsanitary conditions. At the time, individuals who did not pose public safety concerns were not to be placed in lockup because of the risks associated with COVID-19. Trooper Osmer nevertheless booked Dr. Yamindi into jail.

4.22 Trooper Osmer's actions directly and proximately caused Dr. Yamindi severe and ongoing mental anguish and distress. Furthermore, Dr. Yamindi was forced to defend against baseless a criminal prosecution and incurred associated costs.

<u>Trooper Osmer Unlawfully Arrested Plaintiff Nickiesha Gordon</u>

4.23 Less than one month later, Trooper Osmer engaged in almost identical misconduct.

AMENDED COMPLAINT - 4
No. 2:22-CV-00961-LK

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

4.24  On November 2, 2020, Trooper Osmer was on patrol when he decided to follow Nakeisha Gordon as she drove eastbound on I-90, near the Mercer Way exit in King County.

4.25  Trooper Osmer pulled Ms. Gordon over for an alleged traffic infraction.

4.26  Trooper Osmer saw Ms. Gordon was a black female and heard that she spoke with a Jamaican accent.

4.27  Trooper Osmer told Ms. Gordon to exit the vehicle.

4.28  Trooper Osmer had Ms. Gordon perform a breath test.

4.29  The breath test Trooper Osmer administered on the scene showed Ms. Gordon's blood alcohol content was 0.000.

4.30  Ms. Gordon was in fact completely sober.

4.31  Ms. Gordon explained she was not driving under the influence, to which Trooper Osmer replied, "Well then, let's prove that."

4.32  Trooper Osmer had Ms. Gordon perform additional field sobriety tests including the "Horizontal Gaze Nystagmus," "the One Leg Stand," and the "Walk and Turn."

4.33  Ms. Gordon performed all the tests satisfactorily and as instructed.

4.34  Ms. Gordon explained to Trooper Osmer that she was returning from a long shift at work. She offered to call her supervisor to confirm this, but Trooper Osmer refused.

4.35  Trooper Osmer handcuffed Ms. Gordon and placed her under arrest for driving under the influence.

4.36  Trooper Osmer had Ms. Gordon's car impounded.

4.37  Trooper Osmer transported Ms. Gordon in handcuffs to the Washington State Patrol Office in Bellevue.

4.38  Trooper Osmer obtained a search warrant for two vials of blood from Ms. Gordon, and had the blood tested for the presence of alcohol or drugs. The result of the blood test ultimately showed that Ms. Gordon had not consumed any drugs or alcohol.

AMENDED COMPLAINT - 5
No. 2:22-CV-00961-LK

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

4.39 In order to obtain a search warrant for Ms. Gordon's blood, Trooper Osmer falsely represented to a Magistrate Judge that there was reason to believe Ms. Gordon was impaired.

4.40 Trooper Osmer's statement that there was reason to believe Ms. Gordon was impaired was an intentional or reckless misstatement or omission.

4.41 Whether there was reason to believe Ms. Gordon was impaired was material to probable cause or the lack thereof. The warrant would not have issued but for Trooper Osmer's false statement that there was reason to believe Ms. Gordon was impaired.

4.42 Trooper Osmer took Ms. Gordon to King County Jail and booked her. At that time, non-violent offenders were not to be placed in lockup because of the risks associated with COVID-19. Trooper Osmer nevertheless booked Ms. Gordon into jail.

4.43 All charges were dismissed.

4.44 There was no probable cause to arrest Ms. Gordon or draw her blood.

4.45 Trooper Osmer arrested and searched Ms. Gordon without probable because she is black and/or because of her national origin.

4.46 As a direct and proximate result of Trooper Osmer's false arrest of Ms. Gordon, Ms. Gordon was forced to spend the night in jail at the height of the pandemic, then defend against a baseless criminal prosecution and incur associated costs and harms. Furthermore, Trooper Osmer's actions caused her to lose her job, and she was forced to move across the country where she could rely on the support of her relatives. The record of the false arrest continues to prevent Ms. Gordon from obtaining employment. Trooper Osmer's actions also caused Ms. Gordon ongoing mental anguish and distress.

### Trooper Osmer Unlawfully Arrested Plaintiff Fitsum Seifu

4.47 Eighteen days later, Trooper Osmer again engaged in almost identical misconduct. Trooper Osmer pulled Ms. Seifu over on northbound I-5, just south of SR 520 for allegedly driving 40 mph in a 60 mph zone and making slow lane changes.

AMENDED COMPLAINT - 6
No. 2:22-CV-00961-LK

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

4.48 Trooper Osmer saw Ms. Seifu was a black female and heard that she spoke with an accent.

4.49 Trooper Osmer told Ms. Seifu to exit the vehicle.

4.50 Trooper Osmer had Ms. Seifu perform a breath test.

4.51 The breath test Trooper Osmer administered on the scene showed Ms. Seifu's blood alcohol content was 0.000.

4.52 Ms. Seifu was in fact completely sober.

4.53 Ms. Seifu stated repeatedly that she had not taken any medication, drugs, and informed Trooper Osmer that she does not consume alcohol.

4.54 Trooper Osmer told Ms. Seifu that her eyes were red and bloodshot. Ms. Seifu responded that her brother had recently passed away and her eyes were red because she had been crying.

4.55 Trooper Osmer had Ms. Seifu perform additional field sobriety tests including the "Horizontal Gaze Nystagmus," the "Modified Romberg," and the "Walk and Turn."

4.56 Ms. Seifu performed all the tests satisfactorily and as instructed.

4.57 Trooper Osmer called two Washington State Patrol Drug Recognition Experts for advice on potential substances she could have taken. After placing the two phone calls, he placed Ms. Seifu under arrest for driving under the influence and handcuffed her.

4.58 Trooper Osmer transported Ms. Seifu in handcuffs to the Washington State Patrol Office in Bellevue.

4.59 Trooper Osmer obtained a search warrant for two vials of blood from Ms. Seifu, and had the blood tested for the presence of alcohol or drugs. The result of the blood test ultimately showed that Ms. Seifu had not consumed any drugs or alcohol.

4.60 In order to obtain a search warrant for Ms. Seifu's blood, Trooper Osmer falsely represented to a Judge that there was reason to believe Ms. Seifu was impaired.

4.61 Trooper Osmer's statement that there was reason to believe Ms. Seifu was impaired was an intentional or reckless misstatement or omission.

AMENDED COMPLAINT - 7
No. 2:22-CV-00961-LK

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

4.62   Whether there was reason to believe Ms. Seifu was impaired was material to probable cause or the lack thereof. The warrant would not have issued but for Trooper Osmer's false statement that there was reason to believe Ms. Seifu was impaired.

4.63   Trooper Osmer transported Ms. Seifu to King County Jail and booked her. At that time, non-violent offenders were not to be placed in lockup because of the risks associated with COVID-19. Trooper Osmer nevertheless booked Ms. Seifu into jail.

4.64   All charges were dismissed.

4.65   There was no probable cause to arrest Ms. Seifu or draw her blood.

4.66   Trooper Osmer arrested and searched Ms. Seifu without probable cause because she is black and/or because of her national origin.

4.67   As a direct and proximate result of Trooper Osmer's false arrest of Ms. Seifu, Ms. Seifu was forced to spend the night in jail at the height of the pandemic, then defend against a baseless criminal prosecution and incur associated costs and harms. Trooper Osmer's actions caused Ms. Seifu ongoing mental anguish and distress.

<u>Trooper Osmer Unlawfully Arrested Plaintiff Florence Masundire</u>

4.68   Less than two months later, on January 8, 2021, Trooper Osmer again engaged in almost identical misconduct. Trooper Osmer pulled Ms. Masundire over on eastbound I-90 for allegedly making an unsafe lane change.

4.69   In fact, Trooper Osmer had been closely tailing Ms. Masundire as she drove on I-5 and onto eastbound I-90.

4.70   After Trooper Osmer pulled over Ms. Masundire, he saw Ms. Masundire was a black female and heard that she spoke with a slight accent.

4.71   Ms. Masundire was wearing her medical scrubs. She told Trooper Osmer that she was coming from work and was driving to a Church meeting.

4.72   As Ms. Masundire was taking her registration and insurance out of her glove compartment, Trooper Osmer noticed that she had pill bottles in her glove compartment.

AMENDED COMPLAINT - 8
No. 2:22-CV-00961-LK

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.73   Trooper Osmer asked Ms. Masundire what the pills were for. Ms. Masundire told Trooper Osmer that the pills were for high blood pressure and other medical conditions. Trooper Osmer told Ms. Masundire that she had taken the pills and was intoxicated.

4.74   Trooper Osmer told Ms. Masundire to exit the vehicle.

4.75   Trooper Osmer confiscated Ms. Masundire's cell phone.

4.76   Trooper Osmer had Ms. Masundire perform a breath test.

4.77   The breath test Trooper Osmer administered on the scene showed Ms. Masundire's blood alcohol content was 0.000.

4.78   Trooper Osmer administered the breath test at least four times. He accused Ms. Masundire of cheating.

4.79   Trooper Osmer accused Ms. Masundire of stealing medications from her workplace.

4.80   Trooper Osmer had Ms. Masundire perform additional field sobriety tests including the "Horizontal Gaze Nystagmus," the "Modified Romberg," and the "Walk and Turn."

4.81   Ms. Masundire was in fact completely sober.

4.82   Ms. Masundire performed all the tests satisfactorily and as instructed.

4.83   Trooper Osmer asked Ms. Masundire if she knew anyone who could pick up her car. She responded that her brother-in-law could pick up her car. Trooper Osmer asked Ms. Masundire if her brother-in-law can speak "good English." Ms. Masundire responded, "yes, he is white like you, and from the United States."

4.84   Ms. Masundire called her brother-in-law and he came to pick up her car.

4.85   Trooper Osmer transported Ms. Masundire in handcuffs to the Washington State Patrol Office in Bellevue.

4.86   At the Washington State Patrol Office in Bellevue, Trooper Osmer required Ms. Masundire to stand for one hour while handcuffed. Ms. Masundire told Trooper Osmer that she was in pain.

AMENDED COMPLAINT - 9
No. 2:22-CV-00961-LK

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

4.87 Trooper Osmer obtained a search warrant for two vials of blood from Ms. Masundire, and had the blood tested for the presence of alcohol or drugs. The result of the blood test ultimately showed that Ms. Masundire had not consumed any drugs or alcohol.

4.88 In order to obtain a search warrant for Ms. Masundire's blood, Trooper Osmer falsely represented to a Judge that there was reason to believe Ms. Masundire was impaired.

4.89 Trooper Osmer's statement that there was reason to believe Ms. Masundire was impaired was an intentional or reckless misstatement or omission.

4.90 Whether there was reason to believe Ms. Masundire was impaired was material to probable cause or the lack thereof. The warrant would not have issued but for Trooper Osmer's false statement that there was reason to believe Ms. Masundire was impaired.

4.91 Trooper Osmer left Ms. Masundire at the hospital after her blood was drawn. She was not told whether she could leave the hospital. When Trooper Osmer left Ms. Masundire, he told her, "why are you crying? You are lucky that I am not sending you to jail."

4.92 Ms. Masundire called her sister to pick her up at the hospital, and was driven to her home.

4.93 All charges were dismissed.

4.94 There was no probable cause to arrest Ms. Masundire or draw her blood.

4.95 Trooper Osmer arrested and searched Ms. Masundire without probable cause because she is black and/or because of her national origin.

4.96 As a direct and proximate result of Trooper Osmer's false arrest of Ms. Masundire, Ms. Masundire was forced to defend against a baseless criminal prosecution and incur associated costs and harms. Trooper Osmer's actions caused Ms. Masundire ongoing mental anguish and distress.

### Allegations Against Washington State Patrol

4.97 Additionally, or alternatively, Trooper Osmer acted at all times according to Washington State Patrol polices and directives.

AMENDED COMPLAINT - 10
No. 2:22-CV-00961-LK

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

4.98  At all relevant times, Trooper Osmer was an employee of the Washington State Patrol.

4.99  At all relevant times, Trooper Osmer acted within the scope of his employment and under color of state law.

4.100  At all relevant times, the Washington State Patrol had a duty to exercise due care in hiring, training, directing, and supervising its employees, including Trooper Osmer.

4.101  As part of that duty, the Washington State Patrol knew or should have known that its conduct in hiring, training, directing, and/or supervising Trooper Osmer created an unreasonable risk that black and/or immigrant drivers including Dr. Yamindi, Ms. Gordon, Ms. Seifu, and Ms. Masundire would be arrested and searched without probable cause.

4.102  The Washington State Patrol knew or should have known that failure to properly vet, train, direct, and/or supervise Trooper Osmer with respect to race and/or national origin bias and/or the legal standards governing searches and arrests under the 4th Amendment could and would result in unlawful arrests and/or searches of black and immigrant drivers like Dr. Yamindi, Ms. Gordon, Ms. Seifu, and Ms. Masundire. Trooper Osmer arrests black drivers for alleged DUI at disproportionate rates. Trooper Osmer's conduct is consistent with public reports of racial disparities in the Washington State Patrol's enforcement activity in King County. *See*, e.g., *Report to the Washington State Patrol,* Sanders, et al., Wash. State. Univ., 2021, available at: https://www.wsp.wa.gov/wp-content/uploads/2022/02/WSP-Bias-Traffic-Stop-Study_2021.pdf (accessed June 10, 2022).

4.103  The Washington State Patrol knew that Trooper Osmer had a disproportionate number of blood toxicology tests returned with no detected substances.

4.104  The Washington State Patrol failed to exercise due care in hiring, training, and/or supervising Trooper Osmer.

COVID-19 Allegations

4.105  Trooper Osmer's false arrests of Dr. Yamindi, Ms. Gordon, Ms. Seifu, and Ms. Masundire occurred during the height of the COVID-19 pandemic.

AMENDED COMPLAINT - 11
No. 2:22-CV-00961-LK

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.106  At the time of the false arrests, due care required that nonviolent misdemeanor arrestees not be booked in jail, to prevent the spread of COVID-19 and risk to arrestees.

4.107  Trooper Osmer nonetheless booked Dr. Yamindi, Ms. Gordon, and Ms. Seifu into jail, where they were forced to spend the night without adequate COVID-19 precautions.

4.108  As a direct result of this breach of care, Trooper Osmer needlessly exposed Dr. Yamindi, Ms. Gordon, and Ms. Seifu to the risk of contracting COVID-19, which caused Dr. Yamindi, Ms. Gordon, and Ms. Seifu ongoing emotional anguish and distress.

4.109  Alternatively, in failing to exercise due care with respect to the risk of arrestee exposure to COVID-19, Trooper Osmer was acting pursuant to the policies and supervision of the Washington State Patrol.

4.110  The Washington State Patrol failed to exercise due care in designing and implementing COVID-19 policies, exposing Dr. Yamindi, Ms. Gordon, and Ms. Seifu to the risks of COVID-19 as a direct and proximate result.

4.111  The Washington State Patrol failed to exercise due care in supervising, hiring, and/or training Trooper Osmer, exposing Dr. Yamindi, Ms. Gordon, and Ms. Seifu to the risks of COVID-19 as a direct and proximate result.

## V.    CAUSES OF ACTION

**Violation of RCW 49.60.030 (Washington Law Against Discrimination) by Trooper Osmer**

5.1  Trooper Osmer denied Plaintiffs Yamindi, Gordon, Seifu, and Masundire full enjoyment of a public accommodation on the basis of race.

5.2  Trooper Osmer denied Plaintiffs Yamindi, Gordon, Seifu, and Masundire full enjoyment of a public accommodation on the basis of Plaintiffs' national origins, namely Central African Republic, Jamaica, Somalia, and Zimbabwe, respectively.

**Violation of 49.60.030 (Washington Law Against Discrimination) by Washington State Patrol**

5.3  The Washington State Patrol is directly liable for the unlawful discrimination of its employee Trooper Osmer.

AMENDED COMPLAINT - 12
No. 2:22-CV-00961-LK

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**Violations of the Fourth Amendment Under 42 U.S.C. § 1983 by Trooper Osmer**

5.4     Trooper Osmer violated Plaintiffs' clearly established right to be free from unreasonable seizures, protected by U.S. Const. amend. IV, when he arrested them without probable cause.

5.5     Trooper Osmer violated Plaintiffs' clearly established right to be free from unreasonable searches, protected by U.S. Const. amend. IV, when he caused their blood to be drawn without probable cause.

5.6     Trooper Osmer violated Plaintiffs' clearly established right to be free from unreasonable searches, protected by U.S. Const. amend. IV, when he made intentional or reckless omissions and/or misrepresentations to judicial officers to obtain search warrants to draw Plaintiffs' blood.

**Negligence by Trooper Osmer**

5.7     Trooper Osmer negligently exposed Plaintiffs Yamindi, Gordon, Seifu, and Masundire to the risk of COVID-19 infection.

**Negligence by Defendant Washington State Patrol**

5.8     Washington State Patrol negligently hired, trained, directed and/or supervised Trooper Osmer, causing Plaintiffs Yamindi, Gordon, Seifu, and Masundire to be exposed to the risks of COVID-19.

5.9     Washington State Patrol is further liable for all of Trooper Osmer's negligence as his employer, under the doctrine of *respondeat superior*.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jean-Baptiste Yamindi, Nakeisha Gordon, Fitsum Seifu, and Florence Masundire request the following relief:

6.1     A trial by jury on all claims so triable;

6.2     All compensatory and punitive damages authorized by law;

6.3     Additional compensation for any potential increased tax burden;

6.4     The right to amend the pleadings to conform with the evidence;

AMENDED COMPLAINT - 13
No. 2:22-CV-00961-LK

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

6.5     Reasonable attorney's fees and costs under 42 U.S.C. § 1988; RCW 49.60.030, and other applicable law.

DATED this 5th day of May 2023.

                           MacDONALD HOAGUE & BAYLESS

                           By:  ___/s/ Anika Ades___
                                 Joe Shaeffer, WSBA #33273
                                 Nathaniel Flack, WSBA #58582
                                 Anika Ades, WSBA #60298
                                 joe@mhb.com
                                 nathanielf@mhb.com
                                 anikaa@mhb.com
                          Attorneys for Plaintiffs

AMENDED COMPLAINT - 14
No. 2:22-CV-00961-LK

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individuals:

Attorneys for Defendants

GORRY SRA, WSBA No. 49999
Assistant Attorney General
Office of the Attorney General – Torts Div.
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Gorry.Sra@atg.wa.gov

Kelsey Baye, Paralegal
Kelsey.Baye@atg.wa.gov

Denise Daunais, Legal Assistant
Denise.Daunais@atg.wa.gov

E-service Box
TORSeaEF@atg.wa.gov

DATED this 5th day of May, 2023, at Seattle, Washington.

          *s/ Lucas Wildner*
          Lucas Wildner, Legal Assistant

AMENDED COMPLAINT - 15
No. 2:22-CV-00961-LK

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961